UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
99 OCT 15 PM 3:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| TERI S. POWELL, et al., ) | |
| Plaintiffs, ) | |
| v. ) | CV 98-BU-0630-S |
| PARAGON HEALTH NETWORK, ) INC., et al. ) | ENTERED |
| Defendants. ) | OCT 15 1999 |

## Memorandum Opinion

This cause comes to be heard on two pending motions. The first was filed by Defendants Mariner Post-Acute Network, Inc. ("Mariner"); Living Centers East, Inc. d/b/a Fairview Living Center ("Fairview"); and Rehability Health Services, Inc. ("Rehability") seeking to dismiss with prejudice Counts V and V(a) of the third amended complaint, which are brought by Plaintiff Teri S. Powell as a relator for the United States under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., (Doc. No. 47). These Defendants argue that Counts V and V(a) are due to be dismissed on the grounds that Ms. Powell allegedly lacks standing to bring them and that she has allegedly failed to plead these fraud claims with the particularity required by Rule 9(b), Fed. R. Civ. P. The second motion was filed by Ms. Powell seeking leave to file a fourth amended complaint, to further specify the factual allegations giving rise to Counts V and V(a) of her third amended complaint. (Doc. No. 57). In addition to the filings of the parties in support of their respective positions on the motions, the United States has filed a brief as amicus curiae in response to the Defendants' motion to dismiss. Upon due consideration,

the Court concludes that Defendants' motion to dismiss Counts V and V(a) of the third amended complaint is due to be GRANTED IN PART, as the Court finds that these fraud claims are due to be dismissed <u>without prejudice</u> based upon Plaintiff's failure to plead them with the particularity required by Rule 9(b). (Doc. No. 47). However, the Court will also GRANT Plaintiff's motion for leave to file a fourth amended complaint (Doc. No. 57), in order to permit her an opportunity to reassert those claims with more specific factual allegations.

## I. BACKGROUND

Ms. Powell was employed as the Director of Rehabilitation at a Fairview Living Center in Jefferson County, Alabama, from February 11, 1997 to about May 30, 1997. In March 1998, she brought this action alleging that various defendants associated with the Fairview Living Center where she had been employed were liable for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; Alabama state law; and most importantly for our purposes here, the FCA. More specifically, Ms. Powell claims in Counts V and V(a) of her third amended complaint that Mariner, Fairview, and Rehability[1] are liable under the FCA[2] for allegedly submitting fraudulent Medicare claims that were paid by the

---

[1] In her original and first amended complaints, Ms. Powell named the following entities as defendants: Paragon Health Network, Inc.; Fairview Nursing Home, an unincorporated association; Therapy Management Innovations, Inc.; and Rehability Hospital Services, Inc. In her second amended complaint, Ms. Powell added Mariner, Fairview, and Rehability as defendants. Thereafter, Ms. Powell voluntarily dismissed Paragon Health Network, Inc.; Therapy Management Innovations, Inc.; and Rehability Hospital Services, Inc. It is somewhat unclear whether the alleged unincorporated association "Fairview Nursing Home" is a viable defendant.

[2] Section 3729 of the FCA provides in relevant part,
    (a) Liability for certain acts. – Any person who–
    (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;
    (2) knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government . . . is liable to the United States government for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages which the Government sustains because of the act of that person.

government.[3] She brought these claims on behalf of the United States pursuant to the qui tam

---

31 U.S.C. § 3729.

[3]In Count V plaintiff alleges, in pertinent part:
"While employed as Director of Rehabilitation at Fairview Nursing Home, Ms. Powell witnessed numerous violations of Medicare guidelines, some of which are described above. In addition, the defendants, through their agents, representatives and employees, encouraged and demanded that Ms. Powell condone and commit additional violations by submitting fraudulent or false Medicare claims, which she refused. The defendants, through their agents, representatives or employees, knowingly or intentionally submitted fraudulent or false Medicare claims for payment by the government of the United States. Such claims caused the United States to suffer significant monetary and economic loss.
"Wherefore, premises considered, Ms. Powell demands compensatory and punitive damages to be set by a jury, back pay, interest, front pay, reinstatement, costs of this litigation and attorneys' fees."
First Amended Complaint ¶ 34.

In Count V(a), which was added in the First Amended Complaint, plaintiff alleges, in pertinent part:
"The defendants, through their agents, representatives or employees, knowingly or intentionally submitted fraudulent or false Medicare claims for payment by the government of the United States in violation of 31 U.S.C. § 3729(a)(1) and (a)(2). Such claims caused the United States to suffer significant monetary and economic loss. Ms. Powell, on behalf of the United States claims damages therefor.
"Wherefore, premises considered, Ms. Powell, on behalf of herself and the United States, demands treble damages, punitive damages, costs of this litigation, and attorneys fees as well as any and all other relief to which she is entitled."
First Amended Complaint ¶ 36.

It not entirely clear to the Court what the precise difference might be between the claims set forth in Count V and Count V(a). Count V(a) unquestionably is a claim brought on behalf of the United States and Ms. Powell under the FCA to recover for allegedly fraudulent Medicare claims submitted by the Defendants. The relief to be awarded to the United States and to a relator for such a claim is delineated by statute in the FCA. See 31 U.S.C. § 3730(d). But Count V similarly alleges that Defendants filed fraudulent medicare claims and that such caused the United States to suffer economic harm. However, in Count V, Ms. Powell seems to demand damages and relief for herself personally, thereby perhaps suggesting that she is asserting a claim under the anti-retaliation "whistleblower" provision of the FCA, 31 U.S.C. § 3730(h). But Count IV of her complaint already asserts such a claim in clearer terms. In any event, Defendants argue only that Counts V and V(a) should be dismissed insofar as they allege claims brought by Ms. Powell on behalf of herself and the United States for the Defendants alleged Medicare fraud. So the Court will consider Counts V and V(a) in that light.

provisions of the FCA, which required the complaint to be filed under seal. See 31 U.S.C. § 3730(b); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493, 1504 n.16 (11th Cir. 1991). In April 1999, the United States decided not to intervene in the action, see 31 U.S.C. § 3730(b)(4), and the Court entered an order unsealing the complaint.

## II. CONTENTIONS & ANALYSIS

### A. Standing

Mariner, Fairview, and Rehability (hereinafter collectively "Defendants") first contend that Counts V and V(a) of the third amended complaint are due to be dismissed because Ms. Powell allegedly lacks standing to bring these FCA fraud claims on behalf of the government. Defendants point out that while Counts V and V(a) allege that the United States suffered injuries as the result of fraudulent medicare claims purportedly submitted by Defendants, these counts do not allege any concrete or particularized injury that is personal to Ms. Powell. While Defendants concede that the United States could have elected to pursue the medicare fraud claims alleged in Counts V and V(a), Defendants argue that once the United States declined to do so, Ms. Powell, as a private individual, cannot, consistent with constitutional standing requirements under Article III, simply proceed in its stead.

As authority for their position, Defendants rely almost exclusively upon United States ex rel. Riley v. St. Luke's Episcopal Hospital, 982 F.Supp. 1261 (S.D. Tex. 1997), which did indeed hold that a private individual does not have standing under Article III to pursue claims under the qui tam provisions of the FCA for claims where the only injuries alleged are to the government fisc. However, Riley is a distinctly minority position, appearing to be the only case so holding and in the face of both the long-held assumption that qui tam actions are valid, see Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 1030 (1998) (Stevens, J., concurring in the judgment) (noting that qui tam actions are "deeply rooted in our history" and citing cases) and a spate of cases holding that relators do have standing to bring FCA claims. See, e.g., United States ex rel. Kreindler & Kreindler v. United Technologies

Corp., 985 F.2d 1148, 1154 (2nd Cir. 1993), cert. denied, 508 U.S. 973 (1993); United States ex rel. Kelly v. Boeing Co., 9 F.3d 743 (9th Cir. 1993), cert. denied, 510 U.S. 1140 (1994); and United States ex rel. Hall v. Tribal Development Corp., 49 F.3d 1208, 1214 (7th Cir. 1995). Moreover, the Court also notes that in United States ex rel. Weinberger v. Equifax, 557 F.2d 456, 460 (5th Cir. 1977), cert. denied, 434 U.S. 1035 (1978), the Fifth Circuit Court of Appeals[4] did "hold" that the FCA granted standing to an informer-plaintiff to sue on behalf of the government.

In Riley, District Judge Hoyt, who authored the opinion, stated his belief that he was not bound by the Fifth Circuit's Equifax because, he asserted, "the standing issue was not squarely presented and the court simply never addressed Congress's ability to confer standing. Also missing from the opinion is the recognition that an injury-in-fact- is a requirement for standing. Such cursory statements in favor of qui tam actions are neither precedential nor persuasive." 982 F.Supp. at 1268. This Court finds for several reasons, however, that in this Circuit private individuals do have standing to maintain FCA claims on behalf of the government. First, the standing issue was clearly presented in Equifax, as the district court had dismissed the plaintiff's FCA claims in that case for, among other reasons, lack of standing, and the Court of Appeals expressly rejected that position, stating, "We hold that [the plaintiff] had standing under the False Claims Act and properly pursued the action." 557 F.2d at 460. Indeed, while the Equifax court did affirm the trial court's dismissal of the action on the basis that the plaintiff had failed to state a claim under the FCA, the United States Court of Appeals for the Fifth Circuit has subsequently characterized Eqifax as a case in which it "explicitly found

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

that qui tam plaintiffs have standing." United States v. Texas Tech University, 171 F.3d 279, 288 n.12 (5th Cir. 1999). Second, contrary to Judge Hoyt's assertion, the Fifth Circuit did acknowledge the "injury-in-fact" standing requirement in Equifax. See 557 F.2d 459-60. And finally, the Supreme Court of the United States and the United States Court of Appeals for the Eleventh Circuit have examined a number of cases involving FCA qui tam plaintiffs and those Courts have neither held nor even intimated that the plaintiffs there lacked standing under Article III. See, e.g., Hughes Aircraft Co. v. U.S. ex rel. Schumer, 520 U.S. 939 (1997); Cooper v. Blue Cross and Blue Shield of Florida, Inc., 19 F.3d 562 (11th Cir. 1994); United States ex rel. Williams v. NEC Corp., 931 F.2d 1493 (11th Cir. 1991); see also United States for Body v. Blue Cross and Blue Shield of Alabama, Inc., 156 F.3d 1098, 1105 (11th Cir. 1998) (stating that the plaintiff "only has standing to bring this suit through operation of the qui tam provisions of the False Claims Act.").[5]

Further, this Court is in agreement with the majority position, also advanced by the United States in its amicus brief, that Congress may, consistent with Article III, in effect, "deputize" private individuals to pursue claims on behalf of the United States under certain circumstances, as Congress has expressly done under the qui tam provisions of the FCA. Thus, the issue is whether the United States, rather than the relator, has suffered an injury-in-fact for the purposes of Article III. Defendants do not dispute that the injury-in-fact requirement is satisfied as to the United States. One can envision that a congressional delegation of authority

---

[5]It might be argued by Defendants and by Judge Hoyt that cases such as Schumer, Cooper, and NEC have no precedential value on the theory that the standing issue is not specifically addressed by the court or that the standing issue is somehow not "squarely presented." However, the Court would note that Article III standing is a jurisdictional prerequisite that every federal court must determine for itself is satisfied before it can make any further pronouncements. See Steel Co., supra, 118 S.Ct. at 1012, and all federal courts have the obligation to inquire sua sponte into federal subject matter jurisdiction whenever a doubt arises as to its existence. Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 278 (1977). Thus, Article III standing is at issue in every case in federal court, and a court's silence on the matter at least suggests that the court does not doubt that the plaintiff has Article III standing to bring the action.

to private individuals to prosecute the interests of the United States would violate the separation of powers doctrine if such a delegation failed to provide proper involvement in and control over such suits by the executive branch. See generally United States ex rel. Stevens v. State of Vermont Agency of Natural Resources, 162 F.3d 195, 220 (2nd Cir. 1998) (Weinstein, J., dissenting), cert. granted, 119 S.Ct. 2391 (1999). After all, it is that branch that has the ultimate responsibility to "take Care that the Laws be faithfully executed," §U.S. Const., Art. II, sec. 3. However, the FCA's qui tam provisions afford ample authority over FCA litigation to the executive branch, see Ex rel. Gublo v. Novacare, Inc., ___ F.Supp. 2d ___, ___, 1999 WL 673242, *4-*5 (D. Mass. 1999), and, therefore, they do not, in this Court's estimation, contravene the separation of powers doctrine. In the absence of a contrary pronouncement from either the Supreme Court of the United States or the United States Court of Appeals for the Eleventh Circuit, this Court holds that Ms. Powell has standing to pursue her FCA claims for Medicare fraud on behalf of herself and the United States.

B. Pleading Fraud with Particularity and Plaintiff's Motion for Leave to Amend

Next, Defendants argue that Ms. Powell's FCA claims of Medicare fraud embodied in Counts V and V(a) of her third amended complaint should be dismissed with prejudice because she has allegedly failed to plead the facts underlying such claims with the particularity required by Fed. R. Civ. P. 9(b). Defendants contend that Ms. Powell has already amended her complaint three times and has still not alleged her fraud claims with the requisite specificity, indicating, Defendants argue, that she cannot state a particular fraud claim and that Counts V and V(a) should be dismissed with prejudice. Ms. Powell argues that Counts V and V(a) of her third amended complaint plead fraud within the strictures of Rule 9(b), and that even if it does not, she should be allowed to amend her complaint to include additional facts delineating her Medicare fraud claims in Counts V and V(a). Indeed, she has moved the Court for leave to amend, attaching her proposed fourth amended complaint.

Federal Rule of Civil Procedure 9(b) provides, "In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." This rule has four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of.... Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755 F.Supp. 1055, 1056-57 (S.D. Ga. 1990).

The United States Court of Appeals for the Eleventh Circuit has held that a complaint alleging a claim of Medicare fraud under the FCA must comply with Rule 9(b) and must allege the details of the defendants allegedly fraudulent acts, when they occurred, and who engaged in them. Cooper v. Blue Cross and Blue Shield of Florida, Inc., 19 F.3d 562, 568-69 (11th Cir. 1994) (citation omitted). Under Rule 9(b), fraud pleadings generally cannot be based on information and belief, but this requirement is relaxed somewhat when factual information is peculiarly within defendant's knowledge or control; however, even then complaint must adduce specific facts supporting a strong inference of fraud, and supporting facts on which the belief is founded must be set forth in the complaint. United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc., 755 F.Supp. 1040, 1052 (S.D. Ga. 1990). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

In her third amended complaint, which incorporates the allegations of her prior

complaints, Ms. Powell asserts in some detail that she and her subordinates were instructed and pressured by her superiors to engage in conduct that might have led to the submission of false Medicare claims. For example, Ms. Powell maintains that she and others were told to falsify patient records to reflect therapy sessions that never occurred, to put patients in therapy where it was unnecessary, to order equipment for patients on Medicare Part B using the records of patients covered by Medicare Part A, and to remove any records from patient files that could "incriminate" Defendants as violating Medicare guidelines. First Amended Complaint ¶ 11. However, she alleges in only the vaguest and most conclusory of terms that Defendants actually falsified any documents or submitted any fraudulent Medicare claims or why she believed this was the case. Indeed, she asserts only that "[d]espite Ms. Powell's refusal to condone or effect fraudulent or false Medicare claims, the defendants, through their agents, representatives, and employees, succeeded in submitting false or fraudulent claims for Medicare reimbursement to the United States." First Amended Complaint ¶ 16. Similar allegations are set forth in paragraphs 34 and 36 of the Amended Complaints in Counts V and V(a). The Court agrees with Defendants that such pleading is clearly deficient under Rule 9(b) and that these claims are due to be dismissed.

      Defendants further contend that Ms. Powell's failure to plead her FCA fraud claims with particularity means that these claims should be dismissed with prejudice and that her motion to amend her complaint a fourth time should be denied. However, this Court's discretion to dismiss claims of a complaint without leave to amend is "severely restricted" in that Fed. R. Civ. P. 15(a) directs that leave to amend "shall be freely given when justice so requires." Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991). Thus, even if a plaintiff's complaint fails to plead fraud with the particularity required by Rule 9(b), where a more carefully drafted complaint might state a claim, a plaintiff must be afforded at least one chance to amend his complaint before the district court dismisses the action with prejudice. Id. at 1112; Cooper, 19 F.3d at 569. But where a plaintiff submits a proposed amended complaint that also fails to

plead her fraud claims with the particularity required under Rule 9(b), such demonstrates that amendment is futile and leave to amend need not be granted. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2nd Cir. 1995); see also, e.g., Harris v. Ivax Corp., 182 F.3d 799, 807-08 (11th Cir. 1999) (holding that the district court properly denied leave to amend where proposed amendment, like original complaint, failed to state a claim upon which relief could be granted).

It is true, as Defendants emphasize, that Ms. Powell has already amended her original complaint three times. But none of those amendments undertook to state her FCA fraud claims with any greater particularity, as Defendants' instant motion invoking Rule 9(b) is the first challenge to the specificity of those counts. Thus, Ms. Powell must be given at least one opportunity to cure the deficient pleading of her FCA fraud claims. Cooper, supra. To that end, Ms. Powell has appended her proposed fourth amended complaint with her motion for leave to amend. In this proposed amendment, Ms. Powell alleges that while she was employed at Fairview she was told by David Johnston, one of her superiors and a one-time Administrator at Fairview, that he had devised a way to increase revenues by taking Medicare patients and placing them on the therapy caseload whether they needed it or not and then bill Medicare for the units. Proposed Amended Complaint at ¶ 16(a). Ms. Powell further alleges that Mr. Johnston told her that "he had gotten all of the nursing homes in the LCA Company to begin doing the same thing by getting the Directors of Rehab to identify Medicare patients and finding ways to place them on caseload and taking them off before the State inspectors came and then putting them back on the caseload after the inspectors left." Id. As a specific example of such a scheme, Ms. Powell claims that she was present when her immediate supervisor, Angela Allums intimidated therapy personnel to place a patient named Marta on the therapy caseload and to record units for her when the physical therapist did not believe that the patient needed such treatment. Id. at ¶ 16(c). She further claims that, upon lodging protests about the unnecessary therapy units being generated and billed to Medicare, she was told by one of her superiors, Julie [Wettstein], and the prior Director of Rehabilitation, Rene Matthews, that they

would see to it that if Ms. Powell would not do the paperwork necessary to document the false Medicare claims, they would see to it that it got done, thereby suggesting that false claims were in fact filed. Id. at ¶ 16(e). Ms. Powell also asserts that she participated, at Ms. Allums instruction, in removing equipment from one patient's room to another to prevent visiting state inspectors from detecting that some Medicare A patients had been billed for equipment that was provided to Medicare B patients, who were presumably not eligible for such reimbursements. Id. at ¶ 36(c).

Defendants assert that the proposed amendment also lacks sufficient specificity to survive a Rule 9(b) motion, because it fails to specify the names of each beneficiary who was allegedly billed for unnecessary medical services, the exact date of the claims, and the identity of the party submitting the claims. These omissions, Defendants argue, demonstrate that leave to amend should be denied as futile. However, the court in United States ex rel. Thompson v. Columbia/HCA Healthcare, 20 F.Supp. 2d 1017 (S.D. Tex. 1998), explained as follows:

> Furthermore, . . . , courts have consistently found that where allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required to satisfy the pleading requirements of Rule 9(b). Sunbird Air Services, Inc. v. Beech Aircraft Corp., 789 F.Supp. 364, 366 (D. Kan. 1992); Fujisawa Pharmaceutical Co. v. Kapoor, 814 F.Supp. 720, 726 (N.D. Ill. 1993). Where the course of conduct occurs over an extended time period or consists of a series of transactions, the plaintiff need not allege in detail the facts of each transaction of the fraudulent scheme. Bale v. Dean Witter Reynolds, Inc., 627 F.Supp. 650, 652 (D. Minn. 1986). The ongoing scheme alleged here is a course of fraudulent conduct beginning as early as 1990 and involving probably thousands of Medicare claims. Thus far no discovery has been allowed because of the two-and-one-half-year stay imposed by the Court, although discovery is necessary for identification of each invalid claim submitted by Columbia Defendants. Relator also urges that the Fifth Circuit has recognized that Relator was only required to allege the "who, what, when, where, and how" of the alleged fraud. [United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997)].
>
> Furthermore, the Fifth Circuit has recognized that a relaxed pleading requirement was appropriate, "allowing fraud to be pled on information and

> belief where, as here, the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge." Id. at 903; Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067-68 (5th Cir. 1994); In re Catfish Antitrust Litigation, 826 F.Supp. 1019, 1029-30 (N.D. Miss. 1993). Moreover, an exception to the particularity requirement of Rule 9(b) in cases of corporate fraud where the plaintiff cannot be expected to have personal knowledge of the facts constituting the wrongdoing. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987). Rule 9(b) permits allegations of fraud to be based on information and belief when the facts are within the opposing party's knowledge, and Relator states that he has specified in factual detail the precise nature of illegal remuneration, kickback, and self-referral arrangements that caused the providing and submission of fraudulent claims to further the physicians' self-interest. Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992).

20 F.Supp. 2d at 1039.

The Court finds that the proposed amended complaint has been pled with sufficient particularity to satisfy Rule 9(b). The Court concludes that this is a case where Ms. Powell may plead fraud upon information and belief, because the specific information is peculiarly within the Defendants' knowledge. While the government is certainly in possession of the Medicare claims submitted by and on behalf of defendants, such documents would not themselves reveal that the claims were fraudulent. Rather, the information indicating falsity or fraud would come from the patient records themselves, which are in the possession of the Defendants. Ms. Powell has set forth the time period, specific participants, and basic nature of the fraudulent scheme: that personnel acting on behalf of defendants caused false claims to be submitted to Medicare to pay for both unnecessary physical therapy units and for equipment supplied to ineligible Medicare B patients using the records of Medicare A patients. She has also pled sufficient specific facts setting forth the basis for her belief that fraudulent claims were submitted. She is entitled to discovery before bing required to list every false claim made on behalf of specific patients and the dates of such claims and by whom it was submitted. Thompson, 20 F.Supp. at 1049; United States ex rel. Pogue v. American Healthcorp, Inc.,

977 F.Supp. 1329, 1332-33 (M.D. Tenn. 1997). Thus, Ms. Powell's motion for leave to amend shall be granted.

### III.  CONCLUSION

The Court concludes that Defendants' motion to dismiss Counts V and V(a) of the third amended complaint (Doc. No. 47) is due to be GRANTED IN PART, as the Court finds that these fraud claims are due to be dismissed <u>without prejudice</u> based upon Plaintiff's failure to plead them with the particularity required by Rule 9(b). However, the Court will also GRANT Plaintiff's motion for leave to file a fourth amended complaint (Doc. No. 57), in order to permit her an opportunity to reassert those claims with more specific factual allegations.

DONE and ORDERED this 15th day of October, 1999.

_____
H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE